UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-62160-LEIBOWITZ/AUGUSTIN-BIRCH

AMIRREZA MOINI, *et al.*,

       *Plaintiffs*,

*v.*

MARCO RUBIO, *et al.*,

       *Defendants.*

_____/

## ORDER AFFIRMING AND ADOPTING
## REPORT AND RECOMMENDATION

    **THIS CAUSE** is before the Court upon United States Magistrate Judge Panayotta Augustin-Birch Report and Recommendation on Defendants' Motion to Dismiss [ECF No. 18] ("the R&R"), entered on July 15, 2025, recommending that Defendants' Motion to Dismiss ("the Motion") [ECF No. 12] be granted for failure to state a claim.  The undersigned referred the Motion to Judge Augustin-Birch pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules.  [*See* ECF No. 15].  Objections were timely filed by Plaintiffs [ECF No. 19].  Having reviewed and considered the R&R in light of the Objections, the parties' papers, the relevant portions of the record, and the applicable law, the Court concludes that the R&R is well-founded, consistent with the evidence presented, and supported by the law.  Accordingly, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation [ECF No. 18] and **AFFIRMS** the recommendations on the pending Motion [ECF No. 12].  Plaintiffs' Objections [ECF No. 19] to the R&R are **OVERRULED** for the reasons discussed below.

## STANDARD OF REVIEW

    In reviewing a Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to

which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record" to accept the recommendation. Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment, subdivision (b).

## DISCUSSION

### I.   Legal Standard

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). The party seeking to invoke the court's jurisdiction "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). If a court lacks jurisdiction, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause." *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1301 (11th Cir. 2022) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)).

A district court may exercise jurisdiction over a mandamus action "only if (1) the plaintiff has a clear right to the relief requested[,] (2) the defendant has a clear duty to act[,] and (3) no other adequate remedy is available." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir.

2011) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003).  The party seeking a writ of mandamus "carries the burden of showing that [its] right to the issuance of the writ is clear and indisputable." *Carpenter v. Mohawk Indus. Inc.,* 541 F.3d 1048, 1055 (11th Cir. 2008) (cleaned up).  The moving party bears a heavy burden as a writ of mandamus is an extraordinary remedy available "only in the clearest and most compelling of cases." *Cash*, 327 F.3d at 1257 (quotation omitted); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

"Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Perez v. United States Bureau of Citizenship & Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).  However, "[w]here a statute bars judicial review or agency action is committed to agency discretion by law, the [APA] does not permit judicial review." *Bouarfa v. Secretary, Dep't of Homeland Sec.*, 75 F.4th 1157, 1161 (11th Cir. 2023); *see also* 5 U.S.C. § 701 (disallowing judicial review of agency action that is "committed to agency discretion by law"). "Thus, whether a plaintiff seeks a writ of mandamus or to compel agency action under the APA, the court only has jurisdiction where the plaintiff can identify a discrete, nondiscretionary—that is, mandatory—duty for the agency to act." *Nikpanah v. U.S. Dep't of State*, No. 2:24-cv-00404-NAD, 2025 WL 374931, at *4 (N.D. Ala. Feb. 3, 2025).  In other words, relief under the Mandamus Act and the APA "share a common threshold:  The court may act 'only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'" *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (quoting *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

## II.   Analysis

Plaintiffs here—noncitizens whose visa applications were denied under § 221(g) of the INA and placed in administrative processing following their consular interviews [ECF No. 6 ¶¶ 25–35]—

seek to compel the adjudication of their visa applications under the Mandamus Act and 5 U.S.C. §§ 555(b) and 706(1) of the APA.  Plaintiffs argue that (1) consular officers have failed to finally adjudicate their applications as required under 22 C.F.R. § 42.81(a) and that (2) to the extent their applications have received non-final refusals, the government has unreasonably delayed the administrative processing of their applications in violation of 5 U.S.C. §§ 555(b) and 706(1).  Because Plaintiffs have failed to identify a "crystal-clear" nondiscretionary duty to adjudicate their applications without then placing them into administrative processing, Defendants' Motion must be granted. [R&R at 13]; *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024).

A. Statutory Framework

A consular officer determines whether to refuse or grant a visa application based on an in-person interview with the applicant and application materials presented at the interview.  9 FAM § 504.1-3(f).[1]  Under 22 C.F.R. § 42.81(a), a consular officer "*must* issue [or] refuse" the visa application at the conclusion of the interview.  22 C.F.R. § 42.81(a) (emphasis added); *see also* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it.").  Consular officers "cannot temporarily refuse, suspend, or hold the visa for future action" at that point.  9 FAM § 504.1-3(g); *id.* § 504.9-2.  As such, any applicant "to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day . . . must be found ineligible[.]"  9 FAM § 504.1-3(i)(1); *id.* § 504.11-2(A)(a).  The "requirement to find an applicant ineligible when a visa is not issued applies even when" more information might show the applicant to be eligible.  *Id.* § 504.1-3(i)(1).  "There is no such thing as an

---

[1]     As the D.C. Circuit has explained, "the Foreign Affairs Manual 'articulates' the State Department's 'official guidance, including procedures and policies, on matters relating to Department management and personnel[.]'" *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 n.1 (D.C. Cir. July 24, 2024) (quoting 22 C.F.R. § 5.5)).

informal refusal or a pending case once a formal application has been made." *Id.* § 504.1-3(i); *id.* § 504.11-2(A)(b).

When refusing an application, consular officers must select one of the enumerated "grounds for refusal. 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law . . . ."). A consular officer may determine that a refusal could be overcome by additional information, and, as a result, may choose to place an officially refused application in "administrative processing." An officer can then determine *sua sponte* that the administrative processing is "completed" and may re-open and re-adjudicate the applicant's case. *Id.* § 306.2-2(A)(a)(2). "Unless and until that happens, though, the visa application remains officially refused. Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects." *Karimova*, 2024 WL 3517852, at *2.

### B.   Defendants Have Discharged Their Discrete, Nondiscretionary Duties

The issue raised by Defendants' Motion to Dismiss—whether consular officers discharge their duties under the INA and APA when they refuse a visa application and place it into administrative processing—has been the subject of substantial disagreement among the lower courts. The leading case finding in the affirmative is *Karimova v. Abate*, an unpublished, per curiam opinion from the D.C. Circuit handed down in 2024. In that case, the United States Embassy in Georgia refused the application of Gulshana Karimova, a citizen of Azerbaijan, in October of 2019 and placed the application in "administrative processing in order to verify qualifications for [her requested] visa." *Id.* at *2. Karimova filed suit in federal court to compel action under § 555(b) of the APA, arguing that

the officer in charge of her application had "breached [her] duty . . . to make a final decision" by issuing a pro forma refusal of the application before placing it into administrative processing.  *Id.*

In affirming the lower court's dismissal of Karimova's complaint, the D.C. Circuit found that Karimova's "matter" has already been "conclude[d]" for purposes of 5 U.S.C. § 555(b), as Karimova herself had "acknowledge[d] that her application was considered by the consular officer and officially refused."  *Id.* at *4.  The panel found that a visa application placed in administrative processing "remains officially refused" until an officer chooses to "re-open and re-adjudicate the applicant's case," which can "only benefit, never hurt, the applicant's entry prospects."  *Id.* at *2.  Karimova sought to impose a meaning on "conclude," as used in § 555(b), that "neither a federal statute nor regulation clearly require[d]" and which, even if accepted, entitled her "*at most* . . . to the official refusal decision she already received."  *Id.* at *4.  Karimova was not seeking a decision on her application but rather "a post-adjudication ban on holding her application" in administrative processing that found no support in either the INA or the APA.[2]

A number of other courts have reached similar conclusions, including in cases where plaintiffs asserted breaches of nondiscretionary duties under the INA itself rather than the APA.  *See, e.g.,* *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) ("While State may elect to submit those applications to additional review, it has no duty to take any action beyond the action it already took—refusing Plaintiffs' visas . . . ."); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 260 (E.D.N.C. 2024) ("[N]othing in Section 42.81(a) prevents a consular officer from refusing a visa application, and then evaluating it further via administrative processing."); *Turner v. Blinken*, No. RDB-24-318, 2024 WL 4957178, at *6 (D. Md. Dec. 3, 2024) ("Plaintiffs have cited no authority or regulations imposing an additional duty on Defendants to adjudicate a K-1 visa that has been refused, or placed into administrative processing,

---

[2]      That was particularly true given the deference demanded of the judicial branch regarding decisions of the executive to admit or deny the entrance of noncitizens to the country.  *Id.* at *5

under [the INA].  The consular officer who interviewed Quentin already determined that he was ineligible for a K-1 visa, which fulfills Defendants' non-discretionary duty . . . .").

However, not all courts have welcomed *Karimova* with open arms.  Subsequent decisions have declined to follow the D.C. Circuit's unpublished opinion and have argued in response that a consular officer's duty to issue or refuse a visa is not discharged when an officer merely "labels" an application refused and places it in administrative processing.  *See, e.g.*, *Hajizadeh v. Blinken*, No. CV 23-1766, 2024 WL 3638336 (D.D.C. Aug. 2, 2024); *Aramnahad v. Rubio*, No. 24-CV-1817-MAU, 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025); *Omar v. Blinken*, 756 F. Supp. 3d 520, 534 (S.D. Ohio 2024).  In particular, courts have taken the government to task for stock refusal emails—which Plaintiffs here received— that notify the applicant that their application has been placed in administrative processing and that the applicant "will receive another adjudication once such processing is complete."  *See, e.g.*, *Hassan v. Dillard*, 758 F. Supp. 3d 973, 981 (D. Minn. 2024); *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 904 (N.D. Ill. 2024).  According to this view, the promise of "another adjudication" renders the officer's action non-final such that an application remains pending in violation of the 22 C.F.R. § 42.81(a) requirement that an official issue or refuse the application.  Accordingly, courts have roundly criticized *Karimova* and similar decisions for elevating "form over substance" by permitting the government to offer a mere "purported refusal" while holding an application in administrative processing indefinitely.  *See, e.g.*, *Aramnahad*, 2025 WL 973483, at *8; *Hassan*, 758 F. Supp. 3d at 981.  One court put the concern succinctly:  "If the approach in cases like this constitutes a final agency action, the State Department could, in effect, refuse every visa application as a matter of course, place them into the administrative processing queue, and then take far more time than is reasonable to adjudicate the petition."  *Hassan*, 758 F. Supp. 3d at 982.  Thus, merely labelling an application "refused" while condemning it to administrative "limbo" leaves the officer's duties unsatisfied, such that a plaintiff can proceed with a

claim to compel a consular officer to finally adjudicate the application—whatever that may mean. *Id.* at 981.

Having reviewed the conflicting case law, this Court finds that *Karimova* has the better view. While a consular officer does have "a discrete, nondiscretionary duty to adjudicate visa applications," an officer who refuses a visa application and places it in administrative processing satisfies that duty, and Plaintiffs here have failed to identify any other "crystal-clear" nondiscretionary duty cognizable under the Mandamus Act or the APA. *Karimova*, 2024 WL 3517852, at *3; *Yaghoubnezhad*, 734 F. Supp. 3d at 99. Arguments to the contrary, like the ones asserted by Plaintiffs in this case, tend to mistakenly suggest that officers have a discrete, nondiscretionary duty to *finally* refuse or otherwise adjudicate an application under the INA in the specific sense that the application not be placed in administrative processing. [*See* Obj. at 17 ("The Magistrate erroneously finds that a Section 221(g) refusal for administrative processing is a *final* adjudication of a visa application.") (emphasis added)]; *see also, e.g.,* *Omar*, 756 F. Supp. 3d at 533 ("Under Plaintiffs' view, nothing less than a full adjudication and final decision on the application is enough to meet the obligations under the regulation."). However, a reader will search the annals of the INA and its implementing regulations in vain for a provision requiring a consular officer to issue a "final" adjudication. *See Yaghoubnezhad*, 734 F. Supp. 3d at 101 ("Conspicuously absent from this provision [of the INA] is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'"); *see also Ramizi v. Blinken*, No. 5:23-CV-000730-M, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."). 22 C.F.R. § 42.81(a) requires an officer to issue or refuse the visa—that's it—and the INA makes it abundantly clear that a refusal under 22 C.F.R. § 42.81(a) is subject to review. In other words, refusals are explicitly non-final, which places Plaintiffs' attempt to rewrite the INA to require a "final" refusal in direct conflict with other provisions of the statutory scheme. *See Yousefifar v. U.S Dep't of State*, No. 4:24-CV-109,

2025 WL 1805315, at *8 (S.D. Ga. June 30, 2025) ("The determination that a visa refusal followed by administrative processing constitutes a final decision is further supported by the fact that the regulation provides a mechanism to overcome the refusal.").  Under those circumstances, Plaintiffs have failed to identify a "crystal-clear" nondiscretionary duty to refuse a visa application without then placing it into administrative processing.  *Yaghoubnezhad*, 734 F. Supp. 3d at 102 ("By arguing that State must complete administrative processing and issue a 'final' refusal, Plaintiffs ask the Court to impose a duty that has no basis in the INA or its implementing regulations.").  Accordingly, Judge Augustin-Birch correctly concluded that Plaintiffs' mandamus and APA claims fail as a matter of law.[3]

In reaching this conclusion, the Court joins what appears to be a unanimous consensus in the Eleventh Circuit.  *See Zekiri v. Sec'y, U.S. Dep't of State*, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at *4 (M.D. Fla. July 18, 2025) (Sneed, J.); *Saheb v. Allen*, No. 1:24-CV-03860-WMR, 2025 WL 1912443, at *3 (N.D. Ga. Mar. 11, 2025) (Ray, J.); *Yousefifar v. U.S Dep't of State*, No. 4:24-CV-109, 2025 WL 1805315, at *8 (S.D. Ga. June 30, 2025) (Wood, J.); *Nikpanah v. United States Dep't of State*, No. 2:24-CV-00404-NAD, 2025 WL 374931, at *6 (N.D. Ala. Feb. 3, 2025) (Danella, M.J.); *Gonzalez v. Garland*, No. 23-24695-CIV, 2024 WL 4894389, at *8 (S.D. Fla. Oct. 21, 2024) (Goodman, M.J.), *report and recommendation adopted sub nom. Reyes v. Garland*, No. 23-24695-CV, 2024 WL 4893886 (S.D. Fla. Nov. 26, 2024) (Williams, J.).  These decisions agree that an officer discharges her duties under 22 C.F.R. § 42.81(a) when she refuses a visa application and places it into administrative processing. Having discharged these duties, "there is nothing more that the court can order the State Department to do 'within a reasonable time' pursuant to the APA."  *Saheb v. Allen*, No. 1:24-CV-03860-WMR, 2025 WL 1912443, at *3 (N.D. Ga. Mar. 11, 2025) (quoting *Nikpanah v. United States Dep't of State*, No. 2:24-CV-00404-NAD, 2025 WL 374931, at *6 (N.D. Ala. Feb. 3, 2025)).

---

[3]    The Court follows the R&R in declining to reach the other bases for dismissal raised in Defendants' Motion.

Here, Judge Augustin-Birch followed this line of cases in correctly observing that Plaintiffs have not identified (1) "any provision of the INA or its implementing regulations prohibiting a visa application from being placed in administrative processing following its refusal"; (2) "any provision of the INA or its implementing regulations requiring additional adjudication of a visa application that has been refused and placed in administrative processing"; (3) "any provision of the INA or its implementing regulations requiring the completion of administrative processing"; or (4) "any provision of the INA or its implementing regulations requiring a 'final' decision on a visa application in the sense that the application cannot be re-opened, re-reviewed, reconsidered, or re-adjudicated, for example following administrative processing." [R&R at 10–12]. Thus, "Plaintiffs' matters have concluded in that they have received the decisions they are entitled to under the INA and its implementing regulations—issuance or refusal of a visa." [R&R at 11]. Plaintiffs have otherwise failed to satisfy the "threshold" requirement under the Mandamus Act and the APA of showing that Defendants "failed to take a discrete agency action that [they were] required to take" once Plaintiffs' applications were placed in administrative processing. *Karimova*, 2024 WL 3517852, at *1 (quoting *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004)) (cleaned up). Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction under both the Mandamus Act and the APA.

## CONCLUSION

In view of the foregoing and upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Magistrate Judge's Report and Recommendation [ECF No. 18] is **ADOPTED AND AFFIRMED** and incorporated herein.[4]

---

[4]    The Court diverges from the R&R only to the extent that the R&R is styled as a dismissal under Rule 12(b)(6) rather than Rule 12(b)(1). *See Boda v. United States*, 698 F.2d 1174, 1177 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds."). The analysis and result under either Rule are the same; however, because mandamus is jurisdictional in nature, dismissals tend to issue

      2.     The Motion to Dismiss [**ECF No. 12**] is **GRANTED**.  Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.  The Motion to Sever **[ECF No. 12]** is **DENIED AS MOOT**.

      3.     Plaintiffs' Objections [ECF No. 19] are **OVERRULED**.

      4.     The Clerk of Court is instructed to **CLOSE** this case.  All existing deadlines are **TERMINATED** and pending motions, if any, are **DENIED AS MOOT**.

      **DONE AND ORDERED** in the Southern District of Florida on August 20, 2025.

**DAVID S. LEIBOWITZ**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

under Rule 12(b)(1) rather than Rule 12(b)(6).  *See, e.g.*, *Zekiri v. Sec'y, U.S. Dep't of State*, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at *3 (M.D. Fla. July 18, 2025); *see also Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (describing jurisdictional inquiry under Mandamus Act).